UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF DONYOL LAMONT
WESLEY, Decedent, by KIMANI
WESLEY, Personal Representative,

     Plaintiff,

v.

CITY OF INKSTER et al.,

     Defendants.

Case No. 25-10818
Honorable Laurie J. Michelson

---

**ORDER GRANTING DEFENDANTS' AMENDED
MOTION TO DISMISS [11]**

---

On March 11, 2022, Donyol Lamont Wesley tragically died of a drug overdose. A few hours before his death, he was stopped by Inkster Police for impeding traffic. Wesley was obviously unwell. He was coughing, choking, and struggling to breathe. He told the officers he had taken four Xanax pills, so they called EMS. But Wesley declined treatment and walked home unaided. Several hours later, Wesley's condition worsened. Officers responded to Wesley's home following a 911 call, where they found Wesley unresponsive and receiving CPR from a friend. The officers administered one dose of Narcan while awaiting EMS. Shortly thereafter, Wesley was pronounced dead at a nearby hospital.

Wesley's wife, Kimani Wesley ("Kimani"), says the officers should have done more. So she filed this lawsuit against the City of Inkster, the Inkster Police Department, the Inkster Fire Department, and the individual police officers who

attended to her husband. The question the Court must now answer is *not* whether the officers *could* have done more for Wesley, but whether Kimani Wesley has stated a plausible claim that the officers' actions violated her husband's clearly established constitutional rights. She has not. For the reasons that follow, Defendants' motion to dismiss is GRANTED.

## I.

The facts as alleged in Kimani's amended complaint are somewhat sparse but provide the following narrative.[1]

On March 10, 2022, at around 9:30 p.m., City of Inkster police officers initiated a traffic stop of Donyol Wesley for impeding traffic. (ECF No. 8, PageID.81.) Police Officers Hall, Williams, Synder, Kritzer, and Long—collectively, the "defendant officers"—found Wesley "struggling to breathe, exhibiting a persistent, severe cough, and displaying clear signs of an overdose." (*Id.* ("Officer Hall explicitly noted in his report, '[Wesley] kept coughing really bad as he was choking.'").) Wesley told the officers he had taken four Xanax pills, so medics were dispatched. (*Id.* at PageID.80–81.) But thereafter, the officers "failed to transport Mr. Wesley for further medical

---

[1] The Defendants filed a motion to dismiss Plaintiff's initial complaint. (ECF No. 4.) She then amended the complaint. "[M]otions directed at [a] superseded pleading . . . generally are to be denied as moot." *See, e.g., Myslivecek v. FCA US LLC*, No. 23-12980, 2024 U.S. Dist. LEXIS 26685, at *2 (E.D. Mich. Feb. 15, 2024). So the Court dismissed the earlier motion. (Text-Only Order dated June 2, 2025.) Accordingly, the Court considers *only* the allegations contained in Plaintiff's amended complaint (ECF No. 8) and arguments in Defendants' amended motion to dismiss (ECF No. 11).

evaluation" and "allowed [him] to walk home unassisted, without any supervision or follow-up care." (*Id.*)

Several hours later, at around 12:30 a.m. on March 11, "emergency responders from the Inkster Fire Department" dispatched to Wesley's home in response to a 911 call for a medical emergency. (*Id.* at PageID.81–82.) This included police officers Kritzer and Long. (*Id.* at PageID.82.) Upon arrival, they found Wesley unresponsive on the kitchen floor and "observed a friend [of Wesley's] attempting CPR." (*Id.*) At some point, Long "went to his unit and retrieved a single dose of Narcan, which he administered to Mr. Wesley." (*Id.*) But no additional doses were available or administered. (*Id.*) About an hour later, Wesley was pronounced dead at Garden City Hospital. (*Id.* at PageID.82–83.)

Kimani Wesley brought this suit on behalf of her late husband's estate, arguing that through the events of March 10 and 11, the Defendants violated the law in essentially four ways. First, she says the officers who initially stopped Wesley for impeding traffic and who later responded to the 911 call were deliberately indifferent to his obvious medical needs, in violation of his Fourteenth Amendment rights. (*Id.* at PageID.83–84.) Second, she contends the Defendants' failure to timely secure medical intervention during both Wesley's initial stop and later at his residence wrongfully caused Wesley's death. (*Id.* at PageID.84.) Third, she alleges gross negligence and failure to render aid against all Defendants. (*Id.* at PageID.85.) And fourth, she brings a *Monell* claim against the City of Inkster and its police and fire departments, alleging both an unconstitutional policy or practice and failure to

properly train and supervise their police officers and first responders. (*Id.* at PageID.86–87.)

Defendants have moved to dismiss Kimani's amended complaint on two grounds: First, they argue she has failed to plausibly allege that Defendants' conduct was a proximate cause of her husband's death. (ECF No. 11 at PageID.168–171.) And second, they say qualified immunity shields them from suit entirely. (*Id.* at PageID.171–176.)

The motion is fully briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f).[2]

## II. Legal Standard

### A.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require 'detailed factual allegations.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation omitted). But the "[f]actual allegations must be

---

[2] Defendants aver, in a cursory manner, that Plaintiff cannot bring this suit because she is "not a representative of the Decedent's estate pursuant to Michigan's Wrongful Death Act." (ECF No. 11, PageID.167.) But they provide no support. And Plaintiff alleges that she is the Estate's "duly appointed Personal Representative." (ECF No. 8, PageID.79.). So the Court will not further address Defendants' standing challenge.

enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In assessing whether a plaintiff has met this burden, the Court accepts as true the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the light most favorable to the plaintiff. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *see also Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 562–63 (6th Cir. 2011).

**B.**

Begin with Kimani's first and only federal claim under 42 U.S.C. § 1983—that Defendants were deliberately indifferent to Wesley's Fourteenth Amendment Rights.

A claim for relief under § 1983 has two essential components: the plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States, (2) caused by a person acting under the color of state law. *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). Under the Fourteenth Amendment, persons "detained" by law enforcement "have an established right to medical care 'that is analogous to the right of prisoners under the Eighth Amendment.'" *Hodges v. Abram*, 138 F.4th 980, 987 (6th Cir. 2025) (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)) "An officer violates that right if they show 'deliberate indifference to a pretrial detainee's serious medical needs.'" *Id.* (quoting *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022)) (alterations in original).

But in some cases, an officer may be immune from such claims. The doctrine of qualified immunity shields government officials performing discretionary functions

5

"from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It gives those officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified).

A defendant seeking the cover of qualified immunity must assert it as an affirmative defense. *Harlow*, 457 U.S. at 815. But once raised, the burden shifts to the plaintiff to show its inapplicability. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015); *see also Essex v. Cnty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013) ("[plaintiff] bear[s] the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation"); *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) ("Although a defendant ordinarily bears the burden of proof for an affirmative defense, a plaintiff bears the burden of overcoming qualified immunity.") Because Defendants have asserted the defense, the burden to overcome it lays with Kimani.

This means Kimani must show the following: (1) construing the facts in her favor, the officers' conduct violated a constitutional right, and (2) the right was clearly established such that "every reasonable official would have understood that what he is doing violates that right." *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *see Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017). A failure to establish either means the Defendants are entitled to qualified immunity. *See Cunningham v.*

*Shelby Cnty., Tennessee*, 994 F.3d 761, 764 (6th Cir. 2021). The Court may address the issues "in any order." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

### III. Analysis

The Court begins and ends with the clearly established prong.

At the outset, the Court notes that "analyzing the second prong of qualified immunity—whether the alleged constitutional violation is clearly established—'is sometimes difficult' on the pleadings, since that 'inquiry may turn on case-specific details that must be fleshed out in discovery.'" *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 758 (6th Cir. 2022) (quoting *Crawford*, 15 F.4th at 765). But when "the validity of a qualified immunity defense," or lack thereof, is "apparent from the face of the complaint," *Batton v. Sandusky County*, No. 23-3168, 2024 U.S. App. LEXIS 8330, at *6 (6th Cir. Apr. 5, 2024) (quoting *Crawford*, 15 F.4th at 763), it is "entirely appropriate" for the Court to grant a motion to dismiss on qualified immunity grounds. *Witzke v. Rieck*, No. 21-11346, 2022 U.S. Dist. LEXIS 119858, at *11 (E.D. Mich. July 7, 2022).

Under § 1983, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Parsons v. City of Ann Arbor*, No. 22-1338, 2023 U.S. App. LEXIS 11715, at *6 (6th Cir. May 12, 2023) (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir. 2015)); *see Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) ("The concern of the immunity inquiry is to acknowledge that reasonable

mistakes can be made as to the legal constraints on particular police conduct.") (citation omitted).

To carry her burden of showing that the officers transgressed such a "bright line" here, *see Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009), Kimani "must point to 'existing precedent' that has 'placed the statutory or constitutional question beyond debate,'" *Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501, at *8 (6th Cir. Nov. 8, 2024) (quoting *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367 (6th Cir. 2022)). That does not mean she must "identify a case that is 'on all fours' or 'directly on point,'" or a case where the "very action" at issue was found unlawful. *See Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (citations omitted). But she must make a showing that the officers "had 'fair warning' that their actions were unconstitutional" at something other than the highest level of generality. *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005).

Kimani, though, has not pointed to *any* law that "clearly establishes" that the officers' conduct constituted a deliberate indifference to her husband's serious medical needs. (ECF No. 13, PageID.207–210.) While she cites several cases that lay out the legal standard for deliberate indifference (*id.*), she provides no authority suggesting that a law enforcement officer's failure to force a detainee to receive medical treatment, to personally administer CPR, or to administer more than one dose of Narcan, rises to the level of deliberate indifference. (*See id.*) This alone entitles Defendants to qualified immunity. *See, e.g.*, *Bell*, 37 F.4th at 368 (concluding that dismissal under 12(b)(6) was warranted where plaintiff only "fleetingly cited[] a

8

single public case"); *see also Madlock v. Cruse*, No. 25-3028, 2026 U.S. Dist. LEXIS 9034, at *4–5 (D. Kan. Jan. 16, 2026) ("a plaintiff can't shoulder his heavy qualified-immunity burden when he wholly fails to brief the issue"); *Hedger v. Kramer*, 726 F. App'x 677, 684 (10th Cir. 2018) ("The failure to identify such a case is fatal to the claim.").

Nevertheless, the Court briefly addresses the two incidents described in the amended complaint: the officers' initial traffic stop and their later response to the 911 call.

### A. The 911 Response

The Court begins with the officers' conduct at the Wesley's home in response to the 911 call. There are a few preliminary issues that the parties do not adequately address. The first is whether an individual who calls 911 for emergency aid is even "detained" within the meaning of the Fourteenth Amendment when police respond to the home to provide such aid. *See Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 222–23 (6th Cir. 2007). And the second is which of the defendant officers participated in the response to Wesley's home.[3]

Setting those issues aside, however, Kimani has offered no authority that clearly establishes that, to avoid being deliberately indifferent, officers responding to

---

[3] While Kimani seems to allege that all of the named officers participated in the first traffic stop, (ECF No. 8, PageID.81), she mentions only officers Kritzer and Long in her description of the later incident. (*Id.* at PageID.82.) Kimani also references a report written by officer Synder when describing the 911 response, (*id.* ("Officer Synder's report explicitly describe[s] the area as one with high levels of 'drug sales and drug use'")), but it is not clear if her allegation is that Snyder was among those responding to the home, or if he merely wrote a report after the fact.

an overdose must administer CPR themselves or administer more than one dose of Narcan where needed. (*See generally* ECF No. 13.)   And this Circuit's guidance suggests the opposite:

> [A]n officer is charged with providing a detainee with prompt medical attention. However, this attention does not require the officer to intervene personally. Imposing an absolute requirement for an officer to do so ignores the reality that such medical emergency situations often call for quick decisions to be made under rapidly evolving conditions. As long as the officer acts promptly in summoning aid, he or she has not deliberately disregarded the serious medical need of the detainee even if he or she has not exhausted every medical option.

*Stevens-Rucker v. City of Columbus, OH*, 739 F. App'x 834, 846 (6th Cir. 2018).   In fact, failure to administer even a single dose of Narcan is not, on its own, deliberate indifference. *See Williams v. Corecivic of Tenn., LLC*, No. 25-5377, 2026 U.S. App. LEXIS 3897, at *13 (6th Cir. Feb. 6, 2026) ("There is more than one way to treat a drug overdose, and we can find no authority indicating that failure to supply Narcan is, itself, deliberately indifferent.").

True, "[s]ince 2005, it has been clearly established that responding officers may not engage in behavior that could be construed as idle." *Robinson v. City of Knoxville*, No. 24-5159, 2025 U.S. App. LEXIS 4745, at *35 (6th Cir. Feb. 26, 2025). Nor is there a "bright-line" rule that an officer's obligation to provide adequate medical care is discharged when he merely calls for help. *Heeter v. Bowers*, 99 F.4th 900, 919 (6th Cir. 2024). But the allegations in the amended complaint belie a finding that the responding officers were idle bystanders—they saw that CPR was being performed and administered Narcan. (ECF No. 8, PageID.82.)

Kimani's argument is that the officers could have done more: they could have taken over the CPR efforts themselves or carried and administered multiple doses of Narcan in case the first was ineffective. (*Id.* at PageID.82–83.) Fair enough. But she provides no case law that suggests an officer must engage in specific medical interventions or be deemed deliberately indifferent. And again, the law does not support a description of these officers as "idle." *See, e.g.*, *Heeter*, 99 F.4th at 917 (finding an officer was "idle" where he left a gunshot victim "lay[ing] face down . . . for a few minutes" while paramedics were en route without administering any "first aid" care); *Robinson*, 2025 U.S. App. LEXIS at *35–36 (finding officers were not entitled to qualified immunity when a detainee who was shot laid prone on the ground but officers merely stood by, fist bumped, and one officer washed his hands,); *Jones v. City of Cincinnati*, 521 F.3d 555, 558 (6th Cir. 2008) (finding a police sergeant was not entitled to qualified immunity when a detainee was lying face down, not breathing, and all the officer did was call paramedics and nothing else); *see also Est. of Owensby v. City of Cincinnati*, 414 F.3d 596, 601, 603 (6th Cir. 2005) (denying qualified immunity to officers who, after severely beating a detainee, locked him in the back of their cruiser and waited six minutes before calling for medical assistance, during which they greeted each other, prepared for their superiors' arrival, adjusted their uniforms and discussed the severity of the victim's injuries).

In sum, even taking the allegations of the amended complaint as true, Plaintiff has not pointed to any case law clearly establishing that, in responding to a 911 call,

11

an officer administering one dose of Narcan to an overdosing victim as a friend of the victim attempted CPR constitutes "deliberate indifference" to the victim's serious medical needs. So the defendant officers are entitled to qualified immunity on Wesley's claims arising from their response to the 911 call.

### B. The Traffic Stop

The result is the same with regard to the officers' actions during the initial traffic stop. Here, Kimani's theory appears to be that the officers acted with deliberate indifference when they "let" her husband refuse medical treatment and walk away. (ECF No. 8, PageID.81.) More specifically, she alleges the "[m]edics were eventually dispatched, but inexplicably, they failed to transport Mr. Wesley for further medical evaluation. Instead, despite his clear inability to make rational medical decisions given his impaired state, Mr. Wesley was allowed to walk home unassisted, without any supervision or follow-up care." (*Id.*) The medics, however, are not defendants. Nor has Kimani provided authority that clearly establishes that police officers who permit an impaired individual to walk away from medical treatment act with deliberate indifference.

There is Sixth Circuit law that suggests the contrary. The Court dealt with a tragedy strikingly similar to this one in *Williams v. City of Georgetown, Kentucky*, 774 F. App'x 951, 952 (6th Cir. 2019). There, decedent Keith Burns was stopped by police on suspicion of reckless driving. *Id.* He "appeared confused and gave inconsistent responses to the officers questions." *Id.* He told the officers he had recently been hospitalized for a "neurological disorder" and had "missed two doses" of

12

his diabetes medication that day. *Id.* at 953. Concerned about Burns' medical condition, officers called EMS to examine Burns, but he "refused any treatment or transport to a medical facility." *Id.* So the officers impounded his car and allegedly dropped him off at a nearby McDonald's where he would wait for someone to pick him up. *Id.* But McDonald's employees never saw Burns, nor the police dropping someone off. *Id.* At some time later that night, Burns was struck and killed by a van while he was walking in the road two miles south of McDonald's. *Id.* at 954. Burns' sister filed suit, alleging the officers acted with deliberate indifference when they "fail[ed] to give Burns medical attention at the scene and then to abandon him at the McDonald's after the stop." *Id.* The Sixth Circuit disagreed, holding that the officers were not deliberately indifferent to Burns' medical need because they "promptly [sought] medical held by calling paramedics" but that "Burns refused treatment—as was his right." *Id.* at 955. A fair inference arising out of the allegations in the amended complaint is that Wesley likewise refused the medical assistance that the officers sought.

In the analogous Eighth Amendment context, *Hodges*, 138 F.4th at 987, the Sixth Circuit has often found that an individual's refusal of medical treatment precludes a claim of deliberate indifference. *See, e.g.*, *Palmer v. Wagner*, 3 F. App'x 329, 331 (6th Cir. 2001); *Phillips v. Tangilag*, 14 F.4th 524, 538 (6th Cir. 2021) (reasoning that plaintiff could not make out objective element of deliberate indifference claim where the inadequate medical care he received was in part attributable to the fact that he "affirmatively declined treatment at one point"); *see*

13

*also Ashley v. Hill*, No. 24-31, 2025 U.S. Dist. LEXIS 184541, at \*13 (W.D. Mich. Aug. 11, 2025) ("Prison officials are not deliberately indifferent to a prisoner's serious medical needs when the prisoner refuses to accept medical treatment") (citing *Johnson v. Allen*, No. 15-1329, 2016 U.S. Dist. LEXIS 28924, at \*4 (W.D. Mich. March 7, 2016)). So the officers who conducted the initial traffic stop of Wesley are also entitled to qualified immunity.

As such, the renewed motion to dismiss as to the individual police officer defendants must be granted.

## IV.

The amended complaint also asserts *Monell* claims against the City of Inkster, the Inkster Police Department, and the Inkster Fire Department. (ECF No. 8, PageID.86–87.)[4] But "there can be no liability under *Monell* without an underlying constitutional violation." *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 844 (6th Cir. 2025). As the Sixth Circuit has explained:

> when the complaint alleges municipal liability based on a policy of inaction or a failure to train, "[t]he absence of a clearly established right spells the end of th[e] *Monell* claim." That's because a policy of inaction relies on the municipality's deliberate indifference. And 'a municipality cannot deliberately shirk a constitutional duty unless that duty is clear.' Likewise, a failure to train theory requires it be obvious (i.e., clearly established) that the conduct violates a constitutional right. So both theories rely on a clearly established constitutional violation.
> *Id.* (citations omitted).

---

[4] Defendants appear to argue for dismissal of the municipality and its departments on qualified immunity grounds, too. (*See* ECF No. 11, PageID.176.) But "[a] municipality, in contrast to an individual government officer, is not protected by qualified immunity." *See, e.g., Capen v. Saginaw Cnty., Michigan*, 103 F.4th 457, 462 (6th Cir. 2024).

14

So the Court's finding of qualified immunity against the individual defendants also precludes Wesley's *Monell* claim against the city defendants.

## V.

Having dismissed the Estate's claims under federal law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See, e.g.*, 28 U.S.C. § 1367(c)(3); *see also Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("As a rule of thumb, . . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, (1988)); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010).

## VI.

In sum, the individual officer defendants are entitled to qualified immunity on Kimani's § 1983 claim, which shall be DISMISSED WITH PREJUDICE. Finding no underlying constitutional violation, the *Monell* liability claims against the City of Inkster, the Inkster Police Department, and the Inkster Fire Department, also fail and are DISMISSED WITH PREJUDICE. Finally, the Court declines to exercise supplemental jurisdiction over Wesley's remaining state law claims, which are DISMISSED WITHOUT PREJUDICE. So the complaint, in full, is dismissed.

IT IS SO ORDERED.

Dated: March 3, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

15